Nicholson, C. J.,
delivered the opinion of the Court.
Eli Orndoff, as guardian of the minor heirs of John W. Orndoff, brought two suits in the Circuit *168 Court of Robertson, county against Sugg Fort & Co. One was to recover of them, the amount of four notes, each for $200, payable to Eli Orndoff, guardian, for rent of a saw-mill, all of which were due, and unpaid ; the other was to recover damages for breach of a contract of lease for one-half of the water privilege of Red River at and near the saw-mill of Orndoff’s heirs upon said river, at the rate of $200 annually, from August 30, 1862, to 30th of August, 1866.
Before any trial or judgment, Sugg Fort & Co. filed their bill of injunction in the Chancery Court at Springfield, and obtained a fiat enjoining the further prosecution of the suits at law. A demurrer was filed to the bill, upon the ground that the allegations therein did not make a case for the jurisdiction of the chancery court, but 'that the defense of the suits at law was clear and unembarrassed. The Chancellor overruled the demurrer and required the defendants to answer.
After the original bill had been answered, Sugg Fort, E. A. Fort, and E. S. Fort filed another bill against Harriet H. Orndoff, Harriet L. Orndoff, and Eli Orndoff, enjoining them from prosecuting a suit commenced in the Circuit Court of Robertson county by Harriet H. Orndoff, as nest friend of Eli and Harriet L. Orndoff, against complainants, for damages done by them to the saw-mill and lands of said Eli and Harriet L., by said Fort’s raising too high a mill-dam across Red River. Defendants demurred to this bill because complainants had a plain and unembarrassed defense at law. This demurrer was over *169 ruled, and both bills having been answered and proof taken, they were consolidated and tried together, when the Chancellor dismissed the last named bill and left the parties to litigate the matters involved at law.
As to the first bill, he gave defendant Eli Orn-doff, as guardian, a decree for the amount of the four notes, and for the rent of the water privilege as claimed, which, after allowing credits, with interest, amounted to about $1,600, for which he gave a decree against complainants.
From this decree complainants have appealed to this court.
The first question presented is as to the correctness of the decree overruling the demurrer to the first bill. After setting out the facts with much particularity and at great length, complainants sum up their case by stating that the conduct of the defendant in the premises is unconscientions and fraudulent; that their remedy and defenses at law are embarrassed and inadequate; that the writings, particularly the four notes described, should be reformed, so as to set forth properly and fully the agreement of parties; and that they are entitled to a discovery of the various facts charged. The first suit was based on four promissory notes, and the second on a written contract of lease. Complainants allege that they have a good defense to both these suits, but that the remedy at law is embarrassed and inadequate.
It is well settled that general allegations like these furnish no grounds for assuming equitable jurisdiction. The specific facts and circumstances alleged and charged *170 can alone furnish the foundation on which a court of equity can interpose to withdraw a case from a court of law, after such court has acquired jurisdiction. The bare allegation that complainants have not a clear and unembarrassed remedy at law, or that the conduct of the plaintiff at law has been fraudulent, or that a discovery from the defendant is necessary, — such general allegations have no weight, but the jurisdiction of the chancery court must rest on the facts and circumstances alleged. To the facts and circumstances then alleged in the present case, we must look, to see if there is any valid ground on which the circuit court can be ousted of the jurisdiction which it had legitimately acquired.
1. It is said two of the notes sued on were given after the contract of lease of August 30, 1862, and that the consideration therein expressed, — “ for rent of saw mill,” was inserted by inadvertence or mistake, instead of for “the use of one-half of the water of Red River at and near the saw mill,” as expressed in the contract; and that the second suit, based on the contract of lease, seeks to recover for the use of the water, from Aug. 30, 1862, to Aug. 30, 1866; and therefore that plaintiff has two suits pending for the same matter.
Assuming all this to be true, we are at a' loss to see what embarrassment there would be in making the defense at law. We know of no rule which would prevent the defendant at law from showing that the real consideration of the notes was the use of the water, as well as the rent of the saw mill. Upon showing this, it would appear that the two last notes giveir *171 were both for rent of the saw mill and the use of water, and therefore that plaintiff could only recover on the contract of lease from the 1st of July, 1865, when the last note became due. To make this defense, the remedy at law would be complete, and no necessity for reforming the contract exists.
The fact that the plaintiff brought two suits for the same cause of action in the circuit court, furnished no ground for the interference of a court of equity. The rules of pleading at law were amply sufficient to remedy such an evil.
2. It is said that the defendant failed to keep one-half of the dam in repair, as he was bound to do by the contract of lease of August 30, 1862, whereby complainants were damaged to the amount of several thousand dollars, in consequence of their flouring mill remaining idle, at one time for twelve months, and at another for four months, during which time their mill was not able to run, and their dam exposed and injured, and their machinery greatly deteriorated, and large losses sustained in not being able to grind wheat purchased, etc. Whatever damage the defendants in the action at law were entitled to recover, growing out of a breach of the contract by plaintiff, they could have proven and had set off at the trial. They had their election, to rely upon the allowance of such damages by way of recoupment, or to sue for the same in an independent action. Upon adopting either mode, the character of damages would have been defined by the court, and the amount ascertained by the jury. Complainants were bound to resort to one or the other of *172 these modes of redress, unless there was such complication or embarrassment in pursuing their remedies at law that a resort to a court of equity was necessary for the more certain attainment of justice.
In a trial at law it would have been the duty of the court to construe the contract of August 30, 1862, in connection with the stipulations and provisions of the deeds of H. H. Sugg to L. S. Herring and of L. S. Herring to John W. Orndoff. By the latter of these deeds it was provided that if John W. Orn-doff should fail to keep his half of the dam in good repair, then the owner of the other bank should have the right to notify Orndoff to put his half in good repair, and if he did not do it in a reasonable time the owner of the other bank was at liberty to have the whole dam put in repair, and after he should have had it so repaired he was to have the exclusive privilege of using the water until Orndoff should pay one-half the costs of fixing the 1 dam. By these provisions, in both deeds it was the right of complainants when defendant failed or refused to repair his half of the dam, to proceed at once and have the repairs made, and charge the same to defendant. This course was pursued by the owners of the flouring mill until August 30, 1862, when they contracted with defendant as guardian of Orndoff’s heirs, to lease their water privilege adjoining their saw mill. After this contract of lease -was entered into, complainants, when the dam next to the saw mill got out of repair, notified defendant to repair it, and upon his failing to do so, complainants allowed their mill to *173 remain idle instead of doing the repairs themselves and charging the costs to defendant. The contract of August 30, 1862, did not deprive complainants of their right to repair the half of the dam next to the saw mill. They leased all of the water of the stream as long as defendant should continue to be guardian and as long as they should continue ■ to own the flouring mill, agreeing to pay $200 annually for the water privilege and for the keeping up of the repairs on the dam next to the saw mill by defendant. Their right fixed by both deeds, to do the repairing themselves if defendant failed to do it, was in no way affected by the contract of lease. When the dam, therefore, next the saw mill got of repair, and defendant failed to fix it, they had the right to make the repairs, and to have the cost deducted from the annual rent of $200. This cost of repairing would have been the measure of damages they would have been entitled to set off against the rent notes. They would have no right to claim speculative damages«for the loss sustained in allowing their flouring mill to stand idle, or the damage to their dam from exposure to the sun, or for the deterioration of their machinery from standing idle: Thompson v. Shattuck, 2 Met. R., 619.
It is therefore apparent that the ascertainment of the damages to which complainants would have been entitled by way of set-off involved a simple question of fact, eminently proper to be ascertained by a jury, and involved in- no embarrassment and complication requiring the interposition of a court of equity.
*174 3. It is next said, that the conduct of defendant has been unconscientious and fraudulent. We are not clearly informed by the allegations what conduct of defendant is charged to have been unconscientious and fraudulent. If it be in commencing two suits at law for the same cause of action, we have already seen that, if there was any fraud in it, a court of law affords as ample remedy as a court of equity. If it means that defendant was guilty of fraud in failing to repair his half of the dam, according to contract, and in endeavoring to enforce the contract of lease without having so complied with his contract, we have already seen that complainants had ample remedy at law for obtaining redress for the wrong by showing the damages sustained and having them allowed as a set-off.
4. The bill is not framed with a view of obtaining a discovery o.f facts to be used on the trial at law, but for the ordinary discovery called for in bills for „ relief in equity. Under our statutes there was no necessity to come into a court of equity simply for discovery.' This could have been obtained as fully at law as in equity.
Upon a view of all the allegations in the bill we are unable to see that there could have been any embarrassment to the complainants in making their defense at law. The circuit court has obtained jurisdiction of the case, and is fully adequate to afford complainants the means of making their defense. That defense as disclosed in the bill, is peculiarly appropriate in a court of law. To sustain the action of the *175 Chancellor in overruling the demurrer would be to disregard and break down the distinction as to the jurisdiction of courts of law and of equity. We therefore hold that the demurrer to the first bill was erroneously overruled.
But upon the overruling of the demurrer, the defendant submitted to answer, and to go to hearing upon the merits, without applying to this Court as he had a right to do. In his answer he denies and repells all the charges in the bill on which the interposition of a court of equity was invoked. After carefully examining the great volume of evidence taken, we are brought to the conclusion that complainants have failed to overturn the denials of the answer. The evidence of damages relied on by complainants has reference mainly to those losses arising from the failure of the mill to grind, which as we have already stated did not establish the direct and immediate dam-' ages growing out of the failure of defendant to perform his part of the contract of lease, which would have been legitimate subjects of set-off. When the breach in the dam occurred in November, 1864, complainant had the right under the deeds to make the necessary repairs at the cost of defendant. They waived this right, and waited nearly a year, when the repairing was done by defendant; but the evidence tends strongly to show that, during all this time, the stage of water in the river continued such that the repairs could not have been made sooner. If they could, complainants had the right to make them. Having failed to do so, the presumption is, either that they could not be made, *176 or that complainants waived their right to call on defendant to make them at an earlier time. The proof on this subject is not sufficient to overturn the answer, in which it is stated that the repairs were made ' as soon as it could be done, in view of the stage of the water, and immediately after defendant was notified by complainants that they wanted the repairs made.
We are therefore of opinion that complainants have failed to show that they are entitled to any credit by way of damages on the four notes sued on, or on the rent of the water privilege from the time the last note fell due, and that the only credit to which they are entitled is $100, admitted by defendant in his answer.
The Chancellor arrived at the same conclusion, and decreed accordingly. From this decree complainants have appealed. Defendant being satisfied takes no appeal, and waives the error in overruling his demurrer. As the merits of the case have been reached, we affirm the decree of the Chancellor as to the first bill with costs.
As to the second bill, the Chancellor erred ip overruling the demurrer; but as the defendant was allowed to rely .upon his causes of demurrer in his own answer, and did so, and upon the hearing the Chancellor sustained the demurrer, and dismissed the bill, we affirm the decree, and dismiss the second bill with costs, leaving the parties to their rights and remedies at law.